IN THE MATTER OF: A.H., A MINOR CHILD

No. COA06-1709

(Filed 5 June 2007)

**1. Termination of Parental Rights— petition—notice of grounds—sufficient**

Language in a termination of parental rights petition directly paralleled N.C.G.S. § 7B-1111(a)(6) and was sufficient to put respondent on notice of the ground for termination even though the statute was not specifically cited.

**IN RE A.H.**

[183 N.C. App. 609 (2007)]

**2. Termination of Parental Rights— grounds—legal competency regained**

Grounds existed for termination of parental rights under N.C.G.S. § 7B-1111(a)(6) where respondent had been in and out of detox programs and had been adjudicated incompetent but had regained her legal competency. The restoration of respondent's competency did not necessarily mean that she had the capacity to provide proper care and supervision for her child.

**3. Termination of Parental Rights— grounds—recent sobriety—weighed against years of relapses**

Respondent's seven months of sobriety did not preclude the trial court from finding that grounds for termination existed under N.C.G.S. § 7B-1111(a)(6) where the court weighed those months against three years of relapses. The court was entitled to find that there was a reasonable probability that the incapacity resulting from respondent's very serious substance abuse disorder would continue in the future.

Appeal by respondent from order entered 23 August 2006 by Judge P. Gwynett Hilburn in Pitt County District Court. Heard in the Court of Appeals 30 April 2007.

*Anthony Hal Morris for petitioner-appellee.*

*Annick Lenoir-Peek for respondent-appellant.*

GEER, Judge.

Respondent mother appeals from an order of the district court terminating her parental rights as to the minor child A.H. ("Abby").[1] We hold that the trial court's findings of fact support its conclusion of law that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(6) (2005) to terminate respondent's parental rights. Because respondent has not further challenged the trial court's decision that termination is in Abby's best interests, we affirm.

Facts

Petitioner, the Pitt County Department of Social Services ("DSS"), first became involved with respondent in October 2002 when Abby was burned on her wrist by an iron while respondent was holding her.

---

1. In order to maintain the child's privacy and for ease of reading, we will refer to her by the pseudonym "Abby" throughout this opinion.

IN RE A.H.

[183 N.C. App. 609 (2007)]

Respondent did not take Abby to a doctor until directed to do so by DSS the next day. Respondent also had left Abby unattended on several occasions.

On 18 October 2002, respondent began residing at a substance abuse facility for mothers with young children. On 26 December 2002, respondent left the program and resided with her Narcotics Anonymous sponsor until moving into a housing unit for recovering substance abusers. On 14 February 2003, respondent suffered a relapse and, shortly thereafter, was arrested on drug possession charges. Respondent left Abby temporarily with her Narcotics Anonymous sponsor, but DSS obtained custody of Abby on 18 March 2003 due to respondent's incarceration.

On 26 March 2003, respondent was released from incarceration and went to reside with her Narcotics Anonymous sponsor until that sponsor notified DSS that respondent could no longer stay there because she was again using drugs. From April through September 2003, respondent was in and out of detox programs; missed substance abuse treatment appointments; entered and, against medical advice, left a long-term treatment facility after only two weeks; and repeatedly relapsed into drug use.

On 16 September 2003, respondent was declared civilly incompetent in a special proceeding before the Clerk of Pitt County Superior Court. She left Pitt County before a guardian could be appointed. In an order entered on 5 November 2003, Abby was adjudicated a dependent juvenile, and her custody was continued with DSS.

On 30 January 2004, respondent visited with Abby for the child's birthday and brought her gifts. This visit was respondent's only contact with Abby for all of 2004. While the record is generally sparse as to respondent's whereabouts and activities during 2004, the record does reflect that respondent was enrolled in a drug treatment program in Mecklenburg County in March 2004. After completing the program, respondent remained drug free for three to four months. DSS, however, lost contact with respondent after she again relapsed.

On 16 February 2005, respondent and her mother appeared in court pursuant to a subpoena issued by DSS. Respondent's mother agreed to take guardianship of respondent and to complete the required paperwork, but the paperwork was never filed with the clerk's office. Also on 16 February 2005, respondent had another visit with Abby, but when the child did not acknowledge respondent as her

mother, respondent became upset. At that time, respondent told a social worker that she had been drug free for three weeks.

During the spring of 2005, respondent continued to move from location to location and use drugs. At one point, respondent left a message for a DSS social worker informing her that she was in a Black Mountain, North Carolina substance abuse treatment facility and would be there for six months. Respondent, however, left the program on 20 July 2005, although she told DSS on 17 August 2005 that she was receiving outpatient treatment. On 15 September 2005, the trial court relieved DSS of further reunification efforts and changed Abby's permanent plan to adoption. DSS filed a petition to terminate respondent's parental rights on 12 October 2005. As of that date, respondent was incarcerated in Edgecombe County.

In November 2005, respondent contacted a DSS social worker and told her that she was in a half-way house in Wilson, North Carolina. On 9 December 2005, respondent reported that she was in another detox program in Pitt County. Although she left a phone number for the social worker, that number was not a working number. On 14 December 2005, DSS learned that respondent had left the detox program against staff advice. By 29 December 2005, however, respondent had returned to the program. The staff told the DSS social worker that respondent needed intensive treatment.

On 30 December 2005, respondent went to the Walter B. Jones Alcohol and Drug Treatment Center for 30 days of treatment. On 12 January 2006, DSS learned that respondent had left the facility against medical advice, but subsequently DSS was informed that she had been readmitted. On 31 January 2006, respondent notified DSS that she was going to reside in a home for women who are recovering addicts. She moved to a half-way house in April 2006 and obtained employment at a Burger King Restaurant. Respondent's competency was restored in a special proceeding on 26 April 2006. The trial court found that since 30 December 2005, respondent "has made positive steps in recent months by remaining drug free, sober, voluntarily remaining in a halfway house and attending Narcotics Anonymous classes."

The termination of parental rights proceeding was conducted on 8 June 2006 and 6 July 2006 with the trial court entering an order terminating respondent's parental rights on 23 August 2006. Despite acknowledging the recent positive developments in respondent's life, the court found that "[t]he relapses which have occurred

throughout this case cannot be overlooked" and determined that these improvements are "not sufficient for the Court to consider return of [Abby] to Respondent."

The court concluded that termination of respondent's parental rights was warranted on the following grounds: (1) that respondent neglected Abby; (2) that respondent willfully left Abby in foster care for more than 12 months without showing reasonable progress in correcting the conditions that led to Abby's removal; (3) that respondent willfully failed to pay a reasonable portion of the cost of Abby's care for the six-month period preceding the filing of the petition; (4) that respondent was incapable of providing for Abby's proper care and supervision, such that Abby was a dependent juvenile; and (5) that respondent willfully abandoned Abby for at least six months immediately preceding the filing of the petition. Upon finding further that termination was in Abby's best interests, the court declared respondent's parental rights terminated. Respondent timely appealed to this Court.[2]

## Discussion

Under the North Carolina Juvenile Code, a termination of parental rights proceeding involves two distinct phases: an adjudicatory stage and a dispositional stage. *In re Fletcher*, 148 N.C. App. 228, 233, 558 S.E.2d 498, 501 (2002). "First, in the adjudicatory stage, the trial court must determine whether the evidence clearly and convincingly establishes at least one ground for the termination of parental rights listed in N.C. Gen. Stat. § 7B-1111." *Id.* After the petitioner has proven at least one ground for termination, "the trial court proceeds to the dispositional phase and must consider whether termination is in the best interests of the child." *In re Shermer*, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003); *see also* N.C. Gen. Stat. § 7B-1110(a) (2005) ("the court shall determine whether terminating the parent's rights is in the juvenile's best interest").

On appeal, this Court reviews whether "the court's findings of fact are based upon clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." *In re Allred*, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996). We review the trial court's dispositional decision to terminate parental rights for abuse of discretion. *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).

---

2. The trial court also terminated the parental rights of Abby's biological father based on several grounds. The father is not a party to this appeal.

Although respondent assigned error to many of the trial court's findings of fact, claiming that they were unsupported by competent evidence, those assignments of error were not brought forward in her brief.[3] They are, therefore, deemed abandoned. N.C.R. App. P. 28(b)(6). Because those findings of fact are not challenged on appeal, we presume them to be supported by competent evidence, and, accordingly, "our review in this case is limited to determining whether the trial court's findings of fact support its conclusions of law." *In re P.M.*, 169 N.C. App. 423, 424, 610 S.E.2d 403, 405 (2005).

We conclude that the trial court's unchallenged findings of fact are sufficient to support its determination that grounds existed to terminate respondent's parental rights under N.C. Gen. Stat. § 7B-1111(a)(6). Accordingly, we do not address respondent's arguments as to the other grounds relied upon by the trial court. *In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court.").

**[1]** As an initial matter, we must address respondent's argument that DSS failed to state in its petition that it sought to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(6) and, therefore, that she was not on notice of this ground being at issue in the proceeding. As this Court recognized in *In re Humphrey*, 156 N.C. App. 533, 539, 577 S.E.2d 421, 426 (2003), a petition will not be held inadequate simply because it fails to allege the precise statutory provision ultimately found by the trial court. Rather, the adequacy of the petition must be measured according to N.C. Gen. Stat. § 7B-1104(6) (2005), which requires that the petition state "[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist."

Section 7B-1111(a)(6) authorizes termination if the trial court finds:

> That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retar-

---

3. The only findings of fact contested in respondent's brief are those reciting the language of the statutory grounds for termination.

dation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

Although the petition did not specifically refer to N.C. Gen. Stat. § 7B-1111(a)(6), it did allege as grounds:

The mother is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101(15) and there is a reasonable probability that such incapability will continue in the foreseeable future as a result of substance abuse, mental retardation and mental illness and the mother has lacked an appropriate alternative child care arrangement.

This language directly parallels that of N.C. Gen. Stat. § 7B-1111(a)(6) and is "sufficient to put a respondent on notice regarding the acts, omissions, or conditions," *Humphrey*, 156 N.C. App. at 539, 577 S.E.2d at 426, that a trial court must find prior to terminating parental rights under § 7B-1111(a)(6). Respondent, therefore, had sufficient notice with respect to this ground for termination.

[2] Turning to the court's conclusion that grounds existed under § 7B-1111(a)(6) for termination of her parental rights, respondent asserts only that "[b]ecause Respondent-Mother had become legally competent and was maintaining her sobriety, the court erred in finding and concluding that her rights should be terminated on the ground of incapacity." Respondent cites no authority to support her argument as to this ground apart from quoting the statutory provision.

N.C. Gen. Stat. § 7B-1111(a)(6) does not require that a parent be adjudicated civilly incompetent. An incompetent adult is "an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property . . . ." N.C. Gen. Stat. § 35A-1101(7) (2005). Thus, when respondent was adjudicated competent in April 2006, it established only that she had regained her capacity to manage her own affairs, including making decisions regarding her person, family, and property. The restoration of her competency did not necessarily mean that she had the capacity to provide proper care and supervision for her child. *See In re T.W.*, 173 N.C. App. 153, 160, 617 S.E.2d 702, 706 (2005) ("[W]hile respondent may be competent for some purposes, including her ability to assist

counsel and maintain employment, it does not necessarily follow that she is not debilitated by her mental illness when it comes to parenting her children.").

**[3]** We likewise conclude that the respondent's seven months of sobriety beginning in January 2006 did not preclude the trial court from finding that grounds for termination existed under N.C. Gen. Stat. § 7B-1111(a)(6). Respondent does not dispute that she lacked the capacity to care for her daughter prior to 31 December 2005, but contends that her conduct over the seven months immediately prior to the termination hearing establishes that she no longer is incapable of parenting her daughter.

Although the trial court made specific findings regarding respondent's recent positive steps, it weighed the three years of repeated relapses against the seven months of sobriety and reasoned: "The relapses which have occurred throughout this case cannot be overlooked." The trial court was entitled to find, based on the three-year history of relapses, that there was a reasonable probability that the incapacity resulting from respondent's very serious substance abuse disorder would continue in the future. *See In re V.L.B.*, 168 N.C. App. 679, 685, 608 S.E.2d 787, 791 (holding that trial court did not err in considering year-old psychological evaluations in assessing severity and chronic nature of respondents' mental health conditions and "by concluding, based on respondents' history, that they did not have the ability to provide a safe and appropriate home for the minor child"), *disc. review denied*, 359 N.C. 633, 614 S.E.2d 924 (2005); *Smith v. Alleghany County Dep't of Soc. Servs.*, 114 N.C. App. 727, 732, 443 S.E.2d 101, 104 (holding that trial court adequately considered mother's improved psychological condition and living conditions at the time of hearing even though it found, because of recency of improvement, that probability of repetition of neglect was great), *disc. review denied*, 337 N.C. 696, 448 S.E.2d 533 (1994). *Cf. B.S.D.S.*, 163 N.C. App. at 546, 594 S.E.2d at 93 (where mother made some progress immediately prior to termination hearing, but such progress was preceded by a "prolonged inability to improve her situation, . . . there was sufficient evidence to support the trial court's finding of [mother's] lack of progress"); *In re Oghenekevebe*, 123 N.C. App. 434, 437, 473 S.E.2d 393, 397 (1996) (DSS proved lack of reasonable progress where parent "fail[ed] to show any progress in her therapy until her parental rights were in jeopardy").

In short, we uphold the trial court's decision that grounds existed to terminate respondent's parental rights under N.C. Gen. Stat.

§ 7B-1111(a)(6). As respondent raises no objection in her brief to the conclusion that the termination of parental rights was in Abby's best interests, we affirm the order of the trial court.

Affirmed.

Judges STEELMAN and LEVINSON concur.