HUNTER, JR., Robert N., Judge.
Respondent appeals from an order terminating her parental rights to her sons E.S.E. and G.S.S-E. For the following reasons, we affirm.
I. Facts and Background
On 23 June 2014, the New Hanover County Department of Social Services ("DSS") filed a petition alleging E.S.E. and G.S.S-E. were neglected juveniles. The court placed the children in nonsecure custody of DSS. On 17 July 2014, the New Hanover County District Court held an adjudication hearing. On 5 August 2014, the court filed an order adjudicating E.S.E. and G.S.S-E. neglected juveniles.
The court found on 22 June 2014, DSS received a child protective services report concerning the safety and well-being of the two juveniles. A social worker investigated and learned the juveniles' maternal grandparents repeatedly rendered financial assistance to the family in an effort to stabilize the family and protect the juveniles. The maternal grandfather co-signed a six-month lease on a residence but Respondent and her husband failed to keep the home. The grandparents then made significant repairs to another residence but the parents could not maintain that residence either. The parents then resided in motels. The parents resided on a houseboat on the night the children were removed from their custody. Despite his financial assistance, the maternal grandfather reports Respondent and the juveniles came to his business "dirty, smelling, and inappropriately dressed."
Respondent reports and the court found Respondent's husband engaged in domestic violence in the presence of the children. Respondent relates she left the residence with the children out of fear for their safety, seeking refuge first in her car, and then at her sister's home. Records show Respondent's husband with a "significant" history with the child protective services in the State of Iowa, having had three other children permanently removed from his care. Respondent's husband did not appear at the adjudication hearing.
The court also found Respondent entered into a Family Services Agreement on 3 July 2014, but failed to maintain contact with DSS. Respondent failed to attend a scheduled meeting on 10 July 2014 and failed to appear for the Child and Family Team meeting on 11 July 2014.
The court granted legal custody to DSS and ordered each parent to comply with his or her Family Services Agreement, complete a mental health assessment, submit to a substance abuse assessment, submit to random drug screens, obtain and maintain housing and employment, and successfully complete a domestic violence class. The court also allowed the parents to have an hour of supervised visitation per week with the children.
At a review hearing on 17 September 2014, the court found neither parent made progress in accomplishing these benchmarks toward regaining custody of their children. The court found Respondent did not complete the comprehensive clinical assessment or the substance abuse assessment ordered by the court, and she did not have housing appropriate for placement of the children. The court set a permanency planning hearing for 10 December 2014. The court continued the hearing at Respondent's request, and rescheduled it for 14 January 2015. Respondent's husband subsequently requested a continuance and the court rescheduled the hearing for 18 February 2015.
On 18 February 2015, the court held a permanency planning hearing and filed an order on 18 March 2015 in which it found Respondent still had not completed the two assessments, failed to appear for nine of thirteen drug screens requested of her, tested positive for marijuana on the remaining four screens, and additionally tested positive for amphetamines on one of the screens. The court further found Respondent had not established stable and appropriate housing, noting at the time of the hearing Respondent and her husband rented a camper in Salisbury, North Carolina, and proposed moving into a relative's basement in the near future. Respondent and her husband also testified to a possible move to Troy, North Carolina, with the possibility Respondent would enlist in the United States Army. From these representations, the court concluded Respondent and her husband had "no concrete plan for stable housing or employment."
While Respondent and her husband had attended all scheduled visitations since their move to Salisbury, the court found during the pendency of the case, Respondent and her husband failed to appear for nine of the thirty-one scheduled visits with the children, and appeared late for another five visits. Further, at two of the visitations, the social worker was forced to intervene due to an "escalating conflict between the parents."
In sum, the court found the return of the children to their parents was not in their best interests because the parents had not addressed the issues of substance abuse, marital discord, instability in housing, and instability in employment. The court ordered cessation of reunification efforts and determined adoption was the appropriate permanent placement plan.
On 8 July 2015, DSS filed a petition to terminate parental rights on grounds both parents (1) neglected the juveniles with a high probability the neglect will be repeated in the future; and (2) willfully left the juveniles in foster care for more than twelve months without showing to the court reasonable progress has been made in correcting the condition that led to the removal of the juveniles. See N.C. Gen. Stat. § 7B-1111(a)(1), (2) (2015). The petition alleged as an additional ground the juveniles' father had his parental rights to another child involuntarily terminated by a court of competent jurisdiction. See N.C. Gen. Stat. § 7B-1111(a)(9).
The court conducted hearings on 28 September 2015, 9 November 2015, and 2 December 2015 and filed an order on 14 March 2016 concluding all of the alleged grounds for termination of parental rights existed, and it was in the best interests of the juveniles that parental rights be terminated. Respondent filed notice of appeal on 12 April 2016.
II. Jurisdiction
Respondent appeals an order of a district court terminating her parental rights. Jurisdiction is proper in this court pursuant to N.C. Gen. Stat. § 7A-27(b)(2), 7B-1001(a)(6) (2015), and N.C. R. App. P. 3.1(a) (2016).
III. Standard of Review
We review the trial court's order to determine whether the findings of fact are supported by clear, cogent and convincing evidence and whether the findings of fact support the adjudicatory conclusions of law. In re Shepard , 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, disc. review denied sub nom., In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004). We review the conclusions of law de novo . In re S.N., 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009).
IV. Analysis
In a termination of parental rights proceeding, the trial court "examines the evidence and determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination of parental rights." In re T.D.P. , 164 N.C. App. 287, 288, 595 S.E.2d 735, 736 (2004), aff'd per curiam, 359 N.C. 405, 610 S.E.2d 199 (2005). The court focuses upon "whether the parent's individual conduct satisfies one or more of the statutory grounds which permit termination." In re J.S. , 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007). The burden is on the petitioner to prove the facts justifying termination by clear and convincing evidence. N.C. Gen. Stat. § 7B-1111(b) (2015).
A finding of fact is conclusive on appeal if it is supported by competent evidence, even though there may be evidence to support a contrary finding. In re Montgomery, 311 N.C. 101, 110, 316 S.E.2d 246, 252-53 (1984). Moreover, when a party does not challenge a finding of fact, it is presumed to be correct and supported by evidence. In re Moore , 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982). When there is ample other competent evidence to support a finding, the admission of incompetent evidence is not prejudicial error. In re McMillon , 143 N.C. App. 402, 411, 546 S.E.2d 169, 175, disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001). Similarly, when ample other findings of fact support an adjudication, "erroneous findings unnecessary to the determination do not constitute reversible error." In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).
Respondent contends findings of fact number 2, 11, 13 and 14 are not supported by clear, cogent and convincing evidence. In finding of fact number 2, the court stated Respondent and the juveniles' father had not demonstrated housing, financial and marital stability at the time DSS took custody of the children, and both parents "presented with substance abuse issues." Respondent challenges the portion of the finding that Respondent had substance abuse issues at the time the children came into DSS custody. In finding of fact number 11, the court found Respondent and her husband have had substance abuse issues throughout their relationship, and on drug screens requested by DSS, Respondent tested positive for marijuana, amphetamines and codeine. Respondent also often failed to appear for drug screens. Respondent challenges the portion of the finding stating she and her husband had substance abuse issues throughout their relationship. Respondent contests the portion of finding of fact number 13 stating the substance abuse treatment program in which Respondent participated was not the "equivalent of the intensive substance abuse treatment program ordered by the Court." She argues the court never ordered her to participate in an intensive substance abuse program but rather simply ordered her to complete a substance abuse assessment and comply with its recommendations.
We hold there was ample evidence to support the findings. The court report prepared by the social worker for the adjudication hearing on 17 July 2014 shows among the original reasons for court intervention was "[t]here is an identified concern of domestic violence and substance abuse by parents." The report prepared by the guardian ad litem for the same hearing shows Respondent's husband informed the guardian ad litem he and Respondent have a history of drinking and substance abuse, and since Respondent's substance abuse began, "their relationship has fallen apart." He and relatives also reported Respondent was currently abusing Adderall that may not be prescribed to her. Court reports prepared by DSS and the guardian ad litem for subsequent court hearings on 17 September 2014 and 18 February 2015 show over the course of several months Respondent tested positive for drugs on multiple occasions between the court hearings or failed to appear for the drug screens. The juveniles' father also failed to appear for drug screens, tested positive for marijuana, and admitted to usage of marijuana during the same time period. Respondent does not challenge the court's additional statement in finding of fact number 13 that she was referred to the substance abuse intensive outpatient therapy program as one of the recommendations of the mental health assessment ordered by the court. She also does not dispute the finding the substance abuse counselor acknowledged she was spending most of the therapy session on Respondent's childhood issues, domestic violence and anger management. We conclude, based upon this testimony, Respondent was not receiving intensive substance abuse treatment.
Respondent next challenges finding of fact number 14, in which the court found Respondent and her husband "have not maintained employment on a consistent basis." Respondent argues this finding is contradicted by the remainder of the finding of fact in which the court listed the jobs she has had while the children have been in foster care, including a job as a taxi driver at Carolina Beach, jobs at two Papa John's Pizza locations, and a job at Ashley Furniture Company working 50 to 60 hours per week. We need not address whether this finding is an accurate statement because there are ample other findings to support the court's adjudication of the existence of grounds for termination of parental rights as more fully discussed below.
Turning to the grounds for adjudication, we next consider whether the court properly terminated Respondent's rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) on the ground Respondent neglected the juveniles. A juvenile is neglected if he does not receive proper care, supervision, or discipline from his parent, has been abandoned, is not provided necessary medical or remedial care, or lives in an environment injurious to his welfare. N.C. Gen. Stat. § 7B-101(15) (2015). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young , 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). The court must consider evidence of any changed circumstances since the time of a prior adjudication and the likelihood of repetition of the neglect. In re Ballard , 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). When the child has not been in the parent's custody, the court "must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean , 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).
Respondent argues the court failed to consider evidence of changed circumstances, namely that her housing and employment situation had stabilized at the time of the termination hearing. Evidence of changed conditions, however, must be considered in the context of the history of the case and the probability the neglect will be repeated. The court may conclude recent improvements in the parent's situation are counterbalanced by other factors demonstrating a probability of repetition of neglect. Smith v. Alleghany Cty. Dep't of Social Services, 114 N.C. App. 727, 732, 443 S.E.2d 101, 104, disc. review denied , 337 N.C. 696, 448 S.E.2d 533 (1994) (holding although mother made recent improvements in her psychological and living conditions, the trial court properly concluded probability of repetition of neglect was great based on the history of the case and other factors); see also In re A.H., 183 N.C. App. 609, 616, 644 S.E.2d 635, 639 (2007) (holding despite mother's seven-month period of sobriety preceding the hearing, trial court could conclude, based upon mother's history of relapses, there was a reasonable probability mother's serious substance abuse disorder would continue in the future); In re B.S.D.S. , 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004) (holding although mother had made some progress immediately prior to termination hearing, the mother's prolonged inability to improve her situation supported the court's conclusion she failed to make reasonable progress in correcting the conditions that led to the removal of the children) We conclude the court's findings support its conclusion there is a high probability there will be a repetition of neglect.
The court's findings of fact in the termination order reflect that at the time DSS assumed custody of the juveniles, the parents did not have stability in housing, financial matters, or the marital relationship. They relied upon maternal relatives for financial assistance, allegations of recurrent domestic violence disrupted their marital relationship, and both parents had substance abuse issues. At the time the boys were adjudicated as neglected juveniles on 17 July 2014, Respondent was ordered to comply with her Family Services Agreement, complete a mental health assessment and comply with all recommendations, submit to a substance abuse assessment and comply with all recommendations, submit to random drug screens, complete a domestic violence class, and obtain and maintain housing.
After the children were removed from their custody, Respondent and her husband "continued to demonstrate a pattern of instability in housing." They lived in multiple residences in different cities, at times with each other and at times apart from each other. Although the parents did obtain stable housing two months prior to the filing of the petition to terminate parental rights, the residence was outside the county where their children and Respondent's primary support system, her relatives, reside.
The parents continued to engage in domestic violence, each parent having made child protective services reports against the other between June and December 2014. Respondent reported to her mother after she and her husband had moved to Salisbury they were still having "domestic discord." Respondent never completed the domestic violence class ordered by the court. Although her husband did complete a four-hour class on domestic violence offered over the Internet, he did not complete the 26-week class ordered by the court. Respondent continued to have substance abuse issues throughout the period of DSS involvement, either testing positive for substances or failing to appear for drug screens. Despite taking several different jobs throughout the period, Respondent has continued to receive financial assistance from her parents, and has received money for car repairs and dental work.
The court ultimately found, without challenge by Respondent, in finding of fact number 17 that the parents have not provided appropriate care for the children, complied with orders of the court, and obtained the recommended substance abuse and mental health treatment "necessary to ensure the safety and well-being" of the juveniles.
We hold the court's findings support its conclusion of law Respondent neglected the juveniles, there is a high probability of repetition of neglect, and the neglect will continue in the foreseeable future. Having affirmed the determination of one ground, it is unnecessary for us to address Respondent's argument concerning the other ground found by the court to exist. In re P.L.P. , 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), aff'd per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).
The order terminating Respondent's parental rights is
AFFIRMED
Report per Rule 30(e).
Judges DILLON and DIETZ concur.