SMITH v. ALLEGHANY COUNTY DEPT. OF SOCIAL SERVICES

[114 N.C. App. 727 (1994)]

179 S.W. at 128. Several other jurisdictions have similarly held that police officers entering premises in the discharge of their duties have the status of licensees. *See Louisville & N. R. Co. v. Griswold*, 241 Ala. 104, 1 So.2d 393 (1941); *Hall v. Holton*, 330 So.2d 81 (Fla. 1976), *cert. denied*, 348 So.2d 948 (1977); *London Iron & Metal Co., Inc. v. Abney*, 245 Ga. 759, 267 S.E.2d 214 (1980); *Pincock v. McCoy*, 48 Idaho 227, 281 P. 371 (1929); *Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76 (1978); *Nared v. School Dist. of Omaha in Douglas County*, 191 Neb. 376, 215 N.W.2d 115 (1974); *Davy v. Greenlaw*, 101 N.H. 134, 135 A.2d 900 (1957); *Scheurer v. Trustees of Open Bible Church*, 175 Ohio St. 163, 192 N.E.2d 38 (1963); *Kithcart v. Feldman*, 89 Okla. 276, 215 P. 419 (1923); *Cook v. Demetrakas*, 108 R.I. 397, 275 A.2d 919 (1971); *Walters v. Southern S.S. Co.*, 113 S.W.2d 320 (Tex. 1938).

I would affirm the decision of the trial court.

---

LINDA L. SMITH, Plaintiff v. ALLEGHANY COUNTY DEPARTMENT OF SOCIAL SERVICES, DENNIS C. JOHNSON and ANNETTA L. JOHNSON, Defendants

No. 9323DC451

(Filed 17 May 1994)

1. **Parent and Child § 101 (NCI4th)— termination of parental rights—neglected juveniles—mother's improved psychological and living conditions—sufficient consideration by court**

   The trial court sufficiently considered all of the evidence, including evidence of the mother's improved psychological condition and improved living conditions at the time of the hearing, in terminating the mother's parental rights on the ground that her children were "neglected juveniles" as defined in N.C.G.S. § 7A-517(21).

   **Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 24, 29.**

2. **Divorce and Separation § 357 (NCI4th)— custody of neglected children—grandmother's petition—mother's problems—effect on grandmother's mental condition—improper consideration**

   The trial court erred by dismissing plaintiff grandmother's petition for custody of her daughter's neglected children on

the basis of the court's "serious concerns" about the daughter's parenting skills because of "problems experienced by" the daughter and the trial court's "share[d] concerns" expressed by a Virginia DSS regarding plaintiff's "history of depression and how the responsibility of the two children might affect that condition" since plaintiff cannot be held solely responsible for her daughter's behavior as an adult, the record was devoid of any evidence that custody would adversely impact upon plaintiff's mental condition or upon the welfare of the grandchildren, and the evidence tended to show that plaintiff was a fit and proper person to have custody of her grandchildren.

**Am Jur 2d, Divorce and Separation §§ 963 et seq.**

**Award of custody of child where contest is between child's parents and grandparents. 31 ALR3d 1187.**

Appeal by defendant Annetta L. Johnson and plaintiff Linda L. Smith from order entered 18 January 1993 by Judge Edgar B. Gregory in Alleghany County District Court. Heard in the Court of Appeals 8 February 1994.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane Rankin Thompson, for petitioner-appellee Alleghany Department of Social Services.*

*Van Winkle, Buck, Wall, Starnes and Davis P. A., by Michelle Rippon, for plaintiff-appellant Linda L. Smith.*

*Arnold L. Young for defendant-appellant Annetta L. Johnson.*

JOHNSON, Judge.

This is an appeal from an order terminating the parental rights of Dennis C. Johnson and Annetta L. Johnson on the basis of child abuse and neglect and denying grandmother Linda L. Smith custody of the minor children. The minor children involved in this action are a daughter born 24 October 1986 and a son born 14 July 1988. The minor children have been in the custody of Alleghany County Social Services (ACSS) since January 1991 and were adjudicated neglected juveniles in April 1991. Additionally, the minor daughter was adjudicated a sexually abused juvenile in November 1991. In July of 1992, the children's maternal grandmother, Linda Smith, filed a complaint seeking custody of the minor children.

SMITH v. ALLEGHANY COUNTY DEPT. OF SOCIAL SERVICES

[114 N.C. App. 727 (1994)]

The termination proceeding and custody action were consolidated for hearing, and evidence presented for petitioner ACSS tended to show the following: The minor children previously lived with their parents, the Johnsons, in Galax, Virginia, and the Galax Department of Social Services (GDSS) had been involved with the minor children from March 1988 until July 1990; the Johnsons' home was cluttered and dirty when GDSS visited on twelve occasions; on two occasions when the home was not cluttered and dirty, Annetta Johnson said her mother, Linda Smith, had cleaned the home for her; during GDSS's visit in July 1990, the house was filthy and the children were covered with dirt, and at that time the GDSS worker told Annetta Johnson that she would be back to check on the children the next day; however, the GDSS social worker was unable to locate Annetta Johnson and the children the next day and later learned they had moved to Alleghany County in North Carolina.

ACSS became involved with the minor children in September of 1990; the trailer the children lived in was dirty and dangerous for the minor children; and from September through December of 1990, ACSS counseled the Johnsons so that they could improve care for their minor children. In January 1991, ACSS received a report that Dennis Johnson had sexually abused his minor daughter. On 22 January 1991, ACSS went to the home with the sheriff and found the minor children filthy and partially dressed; they observed food crumbs and wood chips on the floor and a heavy infestation of cockroaches in the home; and they noted there was no door on the woodstove, and that toilets and bed sheets were stained, soiled and unclean. On 22 January 1991, the minor children were placed in foster care, and have been in foster care since that date.

On 24 January 1991, Linda Smith and her mother met with ACSS, stating that Annetta Johnson was a slow learner and that they had always done everything for her; Linda Smith requested placement of the minor children (her grandchildren) with her but ACSS declined at that time because of information ACSS had received concerning Linda Smith's history of mental health involvement, and because no home study had been completed on her home in Virginia.

After being placed in foster care, the minor daughter was diagnosed with cerebral palsy with delayed speech and language

development; she also required hospitalization and extensive dental work to repair her teeth. The Johnsons were psychologically tested in March 1991; Dennis Johnson had an IQ score of 90 and Annetta Johnson had an IQ score of 78. In April of 1991, Dennis Johnson confessed to and was eventually convicted of two felonious counts of taking indecent liberties with the minor daughter; Dennis Johnson entered prison in March 1992. Annetta Johnson did not believe that her husband had sexually abused their minor daughter, and she stayed with him (except for one two-week period) until his actual prison sentence began in March 1992. After the minor children were removed from the Johnsons' home and while Annetta Johnson was still in North Carolina, ACSS had twenty-seven office visits and twenty-two phone contacts with Annetta Johnson discussing problems that needed to be remedied for the minor children to be returned home, which included the need for a stable and clean home, stable income, and counseling. Annetta Johnson moved many times between March of 1991 and October of 1992. At the time of the hearing, Annetta Johnson had a job and was living in a trailer in Galax, Virginia.

Evidence presented for Annetta Johnson showed that at the time of the hearing, she was living in Galax, Virginia in a trailer she bought with her lump sum SSI disability payment; that she was working at Mount Rogers Industrial Development Center sewing t-shirts; that she did not have a driver's license and went to and from work in a van provided by the center; and that she was now more independent and could take care of herself and the minor children since her husband went to prison. Results submitted from a November 1992 test indicated that Annetta Johnson's IQ score had increased to 91. On cross-examination, Annetta Johnson testified that she never let the minor children get dirty; that ACSS was making up allegations against her; that her disability payments are related to leg and "nerve" problems; that until ACSS "showed up," she did not have "nerve" problems; that she did not believe her husband had harmed their minor daughter; and that she did not know why the minor daughter had also accused her of sexual abuse unless Linda Smith "put it in her head."

Richard Chafin, a counselor at the Mount Rogers Mental Health Center in Independence, Virginia, testified that he met with Annetta Johnson in March 1992, and that she was upset, with no direction, and was depressed about the situation with her husband and her minor children; that since that time, he felt her self-confidence

had improved, but he had never addressed parenting issues with her and had no opinion on her ability to care for her minor children; and that he did not feel the minor children could return to her without assistance, especially because the minor daughter was diagnosed with cerebral palsy.

Linda Smith testified that she had spent a great deal of time with the minor children prior to their placement in foster care; that she loved them very much and wanted to raise them; that she did not have a driver's license and received SSI disability for depression; that she and her former husband divorced for the second time in 1982 and she had a nervous breakdown in 1984; that she stopped working in 1986 because of her depression; that she has been receiving counseling since 1986; that she had not had emotional problems or hallucinations in the recent past although she had described a number of them to her counselor; and that she felt she had begun improving in 1990.

Daniel Aycock, Linda Smith's counselor, tendered as an expert in the field of psychology and social work, testified that he had counseled regularly since 1986 with Linda Smith at the Mount Rogers Mental Health Center; that he diagnosed her as suffering from depression in remission and felt if the minor children were placed with her, it would be beneficial to her and give her more focus in her life; that he had never met the minor children and could only speculate on what the effect on the minor children would be if they were placed with Linda Smith, but he felt placement in their biological home was better for them; and he stated that what he called "hallucinations" in his notes of his sessions with Linda Smith were more like "daydreams" and what he termed "obsessions" about the minor children was more like "worrying too much."

The order issued by the district court terminated the parental rights of the Johnsons and dismissed Linda Smith's custody action. The court found as fact that the minor children were both adapting well to their foster homes and concluded as law that the best interests of the minor children would be promoted and served by continuing their legal and physical custody with ACSS. Annetta Johnson and Linda Smith have both appealed to our Court.

[1] Annetta Johnson argues that the trial court erred in terminating her parental rights. Specifically, Annetta Johnson asserts that the

trial court did not adequately consider her improved psychological condition and her improved living conditions as of the time of the hearing.

The trial judge concluded as law that the juveniles were "neglected juveniles" as defined by North Carolina General Statutes § 7A-517(21) (1993), those "who do[ ] not receive proper care, supervision, or discipline from [their] parent, guardian, custodian, or caretaker; . . . or who [are] not provided necessary medical care; or who [are] not provided necessary remedial care; or who live[ ] in an environment injurious to [their] welfare[.]" In a termination proceeding, neglect must be proven by clear, cogent and convincing evidence. *In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246 (1984). "[T]he trial court may not base a finding of neglect justifying termination of parental rights solely on a prior adjudication of abuse or neglect." *In re Beck*, 109 N.C. App. 539, 545, 428 S.E.2d 232, 236 (1993).

While making its conclusions of law, the trial court considered *In re Ballard*, 311 N.C. 708, 319 S.E.2d 227 (1984). The Court in *In re Ballard* stated that "[w]e agree that the parents' fitness to care for their children should be determined as of the time of the hearing. The trial court must consider evidence of changed conditions. However, this evidence of changed conditions must be considered in light of the history of neglect by the parents and the probability of a repetition of neglect." *Id.* at 714, 319 S.E.2d at 231. We have examined the record and find that the trial court's conclusions of law properly considered Annetta Johnson's improved psychological condition and her improved living conditions as of the time of the hearing. And, bearing in mind that "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*," *Id.* at 715, 319 S.E.2d at 232, we note the trial court's statement that "[o]nly recently has the mother obtained her own residence, a job and shown any independence. The mother has shown improvement recently in her ability to care for her own needs, but this must be viewed in the light that she no longer has a small son and a handicapped daughter to care for. The 'probability of a repetition of neglect,' . . . is great in the opinion of the Court if the mother, Annetta L. Johnson, had the stress of dealing with her two children thrust back on her." We find the trial court properly considered all of the evidence in concluding as law that the minor children were "neglected juveniles" and

then properly terminated the parental rights of the Johnsons pursuant to North Carolina General Statutes § 7A-289.32 (1993).

**[2]** Linda Smith argues that the trial court erred in concluding as a matter of law that the best interests of the children would be served by continuing their custody with ACSS, thereby rejecting Linda Smith's request for custody.

We note that "[a]ny parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child[.]" North Carolina General Statutes § 50-13.1 (1993). "An order for custody of a minor child . . . shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. An order for custody must include findings of fact which support the determination of what is in the best interest of the child. . . ." North Carolina General Statutes § 50-13.2 (1987).

The trial court made conclusions of law that

this Court has serious concerns about Linda Smith's parenting skills because of the many problems experienced by Annetta Johnson and the extreme dependance of Annetta Johnson on others. This Court also shares the same concerns expressed by the Galax DSS regarding Linda Smith's history of depression and how the responsibility of two children might affect that condition.

We take issue with the trial court's concerns about Linda Smith's parenting skills which are based on the problems experienced by Annetta Johnson. A parent can guide a child during the child's formative years, but cannot be held solely responsible for the child's behavior as an adult. We also note testimony presented at trial that Linda Smith's son, Michael, is now grown and is married, has children, and a job. As such, we find the trial court erred in finding "serious concerns" about Linda Smith's parenting skills because of "problems experienced by Annetta Johnson."

The trial court also, in part, apparently based its decision on not awarding custody of the children to Linda Smith upon its shared concerns with GDSS regarding Linda Smith's history of depression and how having custody might affect her condition. It is clear from the record that this concern was purely speculative. The record is devoid of any evidence to even indicate that custody

would adversely impact upon Linda Smith's mental condition or upon the welfare of the children. The "shared" concerns were merely speculative thoughts without foundation. To the contrary, the evidence shows through the testimony of Daniel Aycock, who was received as an expert, that Linda Smith was found not to be psychotic, that her condition was stable, and that her depression was and had been in remission for some time.

Further, the evidence shows and the trial court so found that Linda Smith was the one who made the calls to ACSS concerning the alleged sexual abuse of the minor daughter by her father; that Linda Smith visited the minor children on every occasion made available to her by ACSS; that Linda Smith is forty-six years old and has lived in the same house in Galax, Virginia for twelve years; that Linda Smith has never been convicted of any criminal offense, has an eleventh grade education and does not consume alcoholic beverages; that Linda Smith's residence, a two story frame house with a large back yard, was in a state of good repair, had three bedrooms and a bath and was described as "immaculate"; that GDSS noted that Linda Smith displayed excellent housekeeping standards; that Linda Smith does not maintain contact with her daughter, Annetta Johnson, because she feels her daughter should have made more of an effort to protect her minor children; that Linda Smith babysits frequently for her grandchildren, nieces and nephews; and that Linda Smith is aware of the minor daughter's diagnosis of cerebral palsy and realizes that she would require special care and that Linda Smith has investigated this with the health department and Mount Rogers Mental Health Center.

We hold, *under the facts of this case*, that the trial court erred in denying and dismissing Linda Smith's petition for custody on the basis of its "serious concerns" about Linda Smith's parenting skills because of "problems experienced by Annetta Johnson," and the trial court's "share[d] . . . concerns expressed by the Galax DSS regarding Linda Smith's history of depression and how the responsibility of two children might affect that condition."

In summary, we affirm the decision of the trial court terminating the parental rights of Dennis Johnson and Annetta Johnson; and we reverse the trial court's decision in dismissing Linda Smith's petition for custody and remand the case for a hearing *de novo* on Linda Smith's petition for custody.

Affirmed in part, reversed in part and remanded.

Judges EAGLES and LEWIS concur.