IN THE SUPREME COURT OF NORTH CAROLINA

No. 397A19

Filed 20 November 2020

IN THE MATTER OF: O.W.D.A.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered on 15 August 2019 by Judge C.W. McKeller in District Court, Henderson County. This matter was calendared for argument in the Supreme Court on 7 October 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Deputy County Attorney Sara H. Player for petitioner-appellee Henderson County Department of Social Services.*

*Michelle FormyDuval Lynch, for appellee Guardian ad Litem.*

*Edward Eldred for respondent-appellant father.*

HUDSON, Justice.

Respondent-father appeals from the trial court's order terminating his parental rights to O.W.D.A. (Owen).[1] After careful review, we affirm.

At Owen's birth in February 2017, his mother tested positive for oxycodone, amphetamines, and methamphetamines, and Owen tested positive for

_____

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

amphetamines and methamphetamines. Consequently, the mother agreed to a safety plan where she would be supervised with Owen by the maternal grandparents.

The Henderson County Department of Social Services (DSS) filed a petition on 6 July 2017 alleging that Owen was a neglected juvenile. At the time DSS filed the petition, the mother was unemployed and did not have stable housing for herself and Owen other than in the maternal grandparents' home. DSS stated that respondent-father was in jail due to a probation violation, was unemployed, and had no stable income. Respondent-father admitted to having an extensive criminal history which included convictions for obtaining property by false pretenses, fraud, larceny, and drug-related offenses. Additionally, respondent-father admitted to using heroin and methamphetamine prior to and since Owen's birth.

At the time of the adjudicatory hearing on 21 December 2017, Owen was in a kinship placement with the maternal grandparents. On 7 February 2018, the trial court entered the consent order in which it adjudicated Owen a neglected juvenile. The trial court entered a separate dispositional order on the same day, and DSS was granted legal custody of Owen.

Following hearings held on 8 November and 13 December 2018, the trial court entered a review order on 11 February 2019. The trial court made extensive findings regarding how both respondent-father and the mother were and were not making progress in the areas required by the court; ultimately, the court found that neither parent was making sufficient progress toward reunification, such that "[i]t is neither

possible nor likely that the juvenile can be returned to a parent within six months." Accordingly, the trial court ordered that the primary permanent plan for the juvenile be adoption with a secondary permanent plan of guardianship.

On 12 February 2019, DSS filed a petition to terminate respondent-father's and the mother's parental rights. DSS alleged that grounds existed to terminate respondent-father's parental rights based on neglect and willful failure to make reasonable progress during the requisite period of time. N.C.G.S. § 7B-1111(a)(1)–(2) (2019). On 28 June 2019, respondent-father filed an answer in which he opposed termination of his parental rights. The mother relinquished her parental rights on 11 July 2019. Following a hearing held on 25 July 2019, the trial court entered an order on 15 August 2019 in which it determined that grounds existed to terminate respondent-father's parental rights as alleged in the petition. The trial court further concluded it was in Owen's best interest that respondent-father's parental rights be terminated. Accordingly, the trial court terminated his parental rights.

On 11 September 2019, respondent-father gave timely notice of appeal pursuant to N.C.G.S. §§ 7A-27(a)(5) and 7B-1001(a1)(1). Respondent-father's counsel, however, failed to sign the notice of appeal. On 13 February 2020, cognizant of the defect in the notice of appeal, respondent-father filed a petition for writ of certiorari. On 10 March 2020, we allowed respondent-father's petition for writ of certiorari.

Respondent-father argues that the trial court erred by adjudicating that grounds existed to terminate his parental rights. "Our Juvenile Code provides for a

two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In re Z.A.M.*, 374 N.C. 88, 94 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6 (2019) (quoting N.C.G.S. § 7B-1109(f) (2019)). We review a trial court's adjudication of grounds to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019).

"[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. at 395. We begin our analysis with consideration of whether grounds existed to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1). A trial court may terminate parental rights where it concludes the parent has neglected the juvenile within the meaning of section 7B-101 of the General Statutes. N.C.G.S. § 7B-1111(a)(1) (2019). A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care,

supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare . . . ." N.C.G.S. § 7B-101(15) (2019).

> Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent.

*In re D.L.W.*, 368 N.C. 835, 843 (2016) (citing *In re Ballard*, 311 N.C. 708, 713–15 (1984)). "When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212 (2019) (citing *Ballard*, 311 N.C. at 715). "However, this evidence of changed conditions must be considered in light of the history of neglect by the parents and the probability of a repetition of neglect." *Smith v. Alleghany Cty. Dep't of Soc. Servs.*, 114 N.C. App. 727, 732 (1994) (quoting *Ballard*, 311 N.C. at 714).

Here, the trial court found that Owen was adjudicated neglected on 21 December 2017 and noted the requirements that respondent-father was required to complete in order to achieve reunification. Among these requirements were that respondent-father refrain from substance abuse, obtain a mental health assessment and comply with all recommendations, including medication compliance, maintain stable income, obtain and maintain an appropriate residence that would be "sufficient and safe" for respondent-father and Owen, refrain from criminal activity, maintain

contact with his social worker, and complete a parenting class. The trial court also made the following additional findings of fact concerning the adjudication of neglect, respondent-father's compliance with his case plan, and its determination that there would be a repetition of neglect should Owen be returned to respondent-father's care:

> 18. The essential underlying issues of the neglect adjudication that concerned the father were [his] abuse of alcohol and illegal substances as well as housing and employment instability. The juvenile has been in [DSS'] custody since he was 10 months old and, prior to entering [DSS'] custody, he was in a kinship placement with [his maternal grandparents]. The father was given the opportunity to work a case plan in the In-home services case prior to [DSS] filing a petition for neglect and did not work the plan sufficient to prevent custody being granted to [DSS]. Throughout the history of this case, the father tested positive for illegal substances on numerous drug screens even after engaging in DART treatment on two separate occasions. The father had a major relapse in May 2018 and was found in the possession of Methamphetamine and the implements to use the drug in June 2018. He is currently incarcerated for the next several years as a result of his criminal activity related to his continued use of drugs.

> 19. The father obtained a mental health assessment with Family Preservation Services/Parkway on May 29, 2018, but failed to follow through with the recommended treatment. He was assigned a therapist, but never started therapy. By his own admission, he is not taking the medication prescribed by a mental health professional while incarcerated.

> 20. The father has had a sporadic employment history. He was terminated from his employment at Asheville Packaging after less than a month due to being late for work. Prior to his incarceration, he was performing occasional odd jobs with a friend, but did not have stable

income and employment.

21. The father only recently started a parenting class while incarcerated. He had the opportunity to take parenting classes during the time period that he was not incarcerated from December 21, 2017 to June 27, 2018 and failed to do so.

22. Prior to his incarceration, the father was residing with the paternal grandfather of the juvenile. The father did not want the social worker to visit the home, stating that he was only staying there temporarily. The father also stated that he did not feel that the home was appropriate for the juvenile. This was the last residence that the father had prior to his incarceration and now he will be incarcerated for at least three years.

23. The father's progress on his case plan prior to entering incarceration in July 2018 was not reasonable progress under the circumstances towards correcting the conditions which led to the neglect adjudication. Although the father has been incarcerated on multiple occasions throughout the course of this case, there was a period of time from December 21, 2017 to June 27, 2018 when he was not incarcerated and could have worked his case plan and court-ordered requirements for reunification given to him at Disposition on December 21, 2017 and he failed to do so.

. . . .

26. The father has neglected the juvenile within the meaning of Chapter 7B of the General Statutes, and there is a probability that such neglect would recur if the Juvenile were to be in the care of the father.

27. While the father is currently incarcerated, based upon the father's lack of progress during the substantial period of time that he was not in custody, the Court has determined that the neglect of the juvenile would likely be repeated if the juvenile were to be placed in the father's care.

"Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019).

We first consider respondent-father's challenge to the portion of finding of fact number 18 which states, in part, that "[t]he essential underlying issues of the neglect adjudication that concerned the father were the abuse of alcohol and illegal substances as well as housing and employment instability." Respondent-father contends that the sole essential underlying issue of the neglect adjudication that related to him was his incarceration. We are not persuaded.

First, respondent-father stipulated to the findings of fact and consented to Owen's adjudication as a neglected juvenile. Among the trial court's findings of fact were:

> 12. The father admitted to using heroin and methamphetamine prior to and since the juvenile's birth. The father was on probation and his probation was violated. He was recommended for an intensive outpatient program. At the time the petition was filed, the father was in jail and the father was likewise unemployed and had no stable income or housing. Father has an extensive criminal history including convictions for obtaining property by false pretenses, fraud, larceny and drug-related offenses.

Respondent-father did not appeal from the trial court's adjudicatory order and is bound by the doctrine of collateral estoppel from re-litigating this issue. *See In re T.N.H.*, 372 N.C. at 409 (stating that because the challenged findings of fact concerned necessary facts that were stipulated to by the mother when the juvenile

was adjudicated neglected, and the mother did not appeal from the adjudicatory order, she was bound by the doctrine of collateral estoppel from re-litigating the findings of fact) (citing *King v. Grindstaff*, 284 N.C. 348, 356 (1973)). Respondent-father cannot now contend that the above issues did not lead to the juvenile's adjudication as neglected. Therefore, finding of fact number 12 above, which was stipulated to by respondent-father in the adjudication order, supports finding of fact number 18 in the order terminating respondent-father's parental rights in Owen.

Additionally, we note that the trial court's finding stated that "[t]he essential underlying issues of the neglect adjudication *that concerned the father* were [his] abuse of alcohol and illegal substances as well as housing and employment instability." Although it appears that the direct issues that led to the adjudication of neglect primarily related to the mother, the trial court was permitted to consider indirect issues which contributed to Owen's neglect and removal. *See In re B.O.A.*, 372 N.C. 372, 381 (2019) (stating that "the trial judge in an abuse, neglect, or dependency proceeding has the authority to order a parent to take any step reasonably required to alleviate any condition that *directly or indirectly* contributed to causing the juvenile's removal from the parental home" (emphasis added)). Thus, we conclude that finding number 18 is supported by clear, cogent, and convincing evidence.

We next consider respondent-father's arguments that the trial court erred by concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate

his parental rights. Respondent-father contends the trial court erroneously relied on circumstances that existed twelve months prior to the termination hearing and failed to consider the circumstances that had changed during the intervening months. Relatedly, respondent-father asserts that the trial court considered only one circumstance that existed at the time of the hearing: his incarceration. Respondent-father thus argues that the trial court terminated his parental rights solely because he was incarcerated and would remain incarcerated for several more years. Respondent-father cites *In re N.D.A.*, 373 N.C. 71 (2019), and argues that "a trial court may not use incarceration as a sword to terminate parental rights[.]" We do not find his arguments persuasive.

We first note that *In re N.D.A.* is distinguishable from this case. In *In re N.D.A.*, the trial court concluded that grounds existed to terminate the father's parental rights on the ground of neglect by abandonment. This Court stated:

> A trial court is entitled to terminate a parent's parental rights in a child for neglect based upon abandonment pursuant to N.C.G.S. § 7B-1111(a)(1) in the event that the trial court finds that the parent's conduct demonstrates a "wilful neglect and refusal to perform the natural and legal obligations of parental care and support." We agree with the Court of Appeals that, "in order to terminate a parent's rights on the ground of neglect by abandonment, the trial court must make findings that the parent has engaged in conduct 'which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child' as of the time of the termination hearing."

*Id.* at 81 (citations omitted). The father in *In re N.D.A.* had been incarcerated when DSS began its investigation relating to the juvenile, remained incarcerated when the juvenile was adjudicated neglected, and continued to be incarcerated for a period of time thereafter. *Id.* at 82. This Court vacated and remanded the trial court's termination order upon determining that:

> the trial court's findings of fact did not adequately support a determination that respondent-father's parental rights in [the juvenile] were subject to termination based upon neglect by abandonment given the absence of any findings concerning respondent-father's ability to contact petitioner or [the juvenile], to exercise visitation, or to pay any support in order to determine that his abandonment was willful.

*Id.*

Here, the trial court's conclusion that grounds existed to terminate respondent-father's parental rights was not based upon neglect by abandonment. Instead, the trial court determined that there would be a likelihood of future neglect based upon respondent-father's history of failure to comply with his case plan. In addition to finding that the father was incarcerated at the time of the hearing, the trial court also found that during the period before his incarceration respondent-father: (1) failed to refrain from substance abuse; (2) obtained a mental health assessment but failed to follow through with the recommended treatment; (3) failed to maintain stable employment or income; (4) failed to take parenting classes; and (5) failed to maintain stable housing suitable for Owen. The court considered each of these failures as

evidence of past neglect and the likelihood of future neglect. *See In re Z.V.A.*, 373 N.C. at 211–12 (stating that if it cannot be shown whether the parent is neglecting the child at the time of the termination hearing because the parent and child have been separated, "there must be a showing of past neglect and a likelihood of future neglect by the parent"); *see also In re T.N.H.*, 372 N.C. at 412–13 (recognizing that although "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision," respondent-mother's history of unstable housing and her failure to complete her case plan *before* becoming incarcerated supported the trial court's conclusion to terminate her parental rights under N.C.G.S. § 7B-1111(a)(9)).

Furthermore, the trial court here did not look only at past circumstances in making its determination. While the trial court emphasized respondent-father's failure to comply with his case plan before his incarceration, it is evident that the trial court also considered evidence of changed circumstances occurring during his incarceration, which began in late June 2018. Specifically, the trial court found and considered that respondent-father had started taking a parenting class and that he was working while incarcerated. The trial court also found and considered, however, that respondent-father, by his own admission, was not taking the medication prescribed to him for his mental health while incarcerated.

Although a court "must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing," *In re Z.V.A.*, 373 N.C. at 212, "evidence of changed conditions must be considered in light

of the history of neglect by the parents and the probability of a repetition of neglect," *Smith*, 114 N.C. App. at 732 (quoting *Ballard*, 311 N.C. at 714). Therefore, although respondent-father may have made some minimal progress during his most recent incarceration, the trial court was within its authority to weigh the evidence and determine that these eleventh-hour efforts did not outweigh the evidence of his persistent failures to make improvements while not incarcerated, and to conclude that there was a probability of repetition of neglect should Owen be returned to his care. *See id.* at 732 (holding that the trial court adequately considered mother's improved psychological condition and living conditions at the time of the hearing even though it found, because of recency of improvement, that probability of repetition of neglect was great), *disc. review denied*, 337 N.C. 696 (1994); *see also In re J.H.K.*, 215 N.C. App. 364, 369 (2011) ("Relevant to the determination of probability of repetition of neglect is whether the parent has made any meaningful progress in eliminating the conditions that led to the removal of the children." (cleaned up)). Taken together, the trial court's findings support its conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate respondent-father's parental rights.

The trial court's conclusion that one statutory ground for termination existed pursuant to N.C.G.S. § 7B-1111(a)(1) is sufficient in and of itself to support termination of respondent-father's parental rights. *In re E.H.P.*, 372 N.C. at 395. As such, we need not address respondent-father's arguments regarding N.C.G.S. § 7B-

1111(a)(2).[2] Furthermore, respondent-father does not challenge the trial court's conclusion that termination of his parental rights was in Owen's best interest. *See* N.C.G.S. § 7B-1110(a) (2019). Accordingly, we affirm the trial court's order terminating respondent-father's parental rights.

AFFIRMED.

[2] We note respondent-father's challenge to finding of fact 13. However, this finding of fact related solely to the trial court's conclusion that grounds existed to terminate his parental rights pursuant to N.C.G.S. § 7B-1111(a)(2). Accordingly, this finding is not necessary to affirm the trial court's conclusion that grounds existed under N.C.G.S. § 7B-1111(a)(1) to terminate respondent-father's parental rights, and we therefore decline to address it. *See In re T.N.H.*, 372 N.C. at 407 ("[W]e review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." (citing *In re Moore*, 306 N.C. 394, 404 (1982)).