IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-23

 No. 230A20

 Filed 19 March 2021

 IN THE MATTER OF: B.T.J.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18

 February 2020 by Judge Charlie Brown in District Court, Rowan County. This matter

 was calendared for argument in the Supreme Court on 11 February 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Jane R. Thompson for petitioner-appellee Rowan County Department of Social
 Services.

 McGuireWoods LLP, by Anita Foss, for appellee Guardian ad Litem.

 Wendy C. Sotolongo, Parent Defender, by J. Lee Gilliam, Assistant Parent
 Defender, for respondent-appellant mother.

 HUDSON, Justice.

¶1 Respondent-mother appeals from the trial court’s order terminating her

 parental rights to her minor child B.T.J. (Blake).1 Since we conclude that the trial

 court properly adjudicated at least one ground for termination, we affirm the

 termination order.

 1 A pseudonym is used to protect the identity of the juvenile and for ease of reading.
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

¶2 On 25 August 2017, the Rowan County Department of Social Services (DSS)

 filed a juvenile petition alleging that Blake was neglected and dependent. On that

 date, DSS responded to respondent-mother’s hotel room after receiving a report that

 she had overdosed on heroin in Blake’s presence. Eleven days earlier, respondent-

 mother had obtained a domestic violence protective order against Blake’s father

 which also forbade him from having contact with Blake. As a result, neither of Blake’s

 parents could provide care for him. DSS also alleged that Blake’s parents both had

 an “intense and significant” history of substance abuse, which had previously

 necessitated a referral for in-home services on two occasions. DSS obtained nonsecure

 custody of Blake and placed him in foster care.

¶3 On 15 February 2018, the trial court, with the consent of all parties, entered

 an order adjudicating Blake as a neglected and dependent juvenile. Respondent-

 mother was ordered to maintain safe and stable housing, comply with the

 recommendations of her substance abuse and mental health assessments, submit to

 random drug screens, participate in Blake’s treatment if recommended by Blake’s

 therapist, and sign releases of information needed to monitor her treatment progress.

 The order also provided respondent-mother with one hour of supervised visitation per

 week.

¶4 On 4 April 2018, respondent-mother was found guilty of a felony drug charge,

 misdemeanor larceny, misdemeanor second-degree trespassing, and misdemeanor
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

 child abuse. She was placed on thirty months of supervised probation. On 18 May

 2018, respondent-mother was incarcerated, and she remained so until she entered

 inpatient substance abuse treatment on 24 October 2018. After her release from

 treatment on 21 January 2019, she continued to test positive for various controlled

 substances on 4 February 2019, 18 February 2019, 7 June 2019, and 1 July 2019.

¶5 On 29 July 2019, DSS filed a petition seeking to terminate respondent-

 mother’s parental rights on the grounds of neglect and willfully leaving Blake in a

 placement outside the home for more than twelve months without making reasonable

 progress toward correcting the conditions that led to his removal. See N.C.G.S. § 7B-

 1111(a)(1)–(2) (2019). In addition to chronicling respondent-mother’s drug use, DSS

 also alleged that respondent-mother had difficulty maintaining consistent housing,

 employment, and visitation with Blake.

¶6 After a two-day hearing in early November 2019, the trial court entered an

 order on 18 February 2020 which terminated respondent-mother’s parental rights.

 The trial court concluded that DSS had proven both alleged grounds for termination

 and that termination was in Blake’s best interests. Respondent-mother appealed.2

¶7 On appeal, respondent-mother challenges both grounds for termination found

 by the trial court. She argues that in light of the severity of her addiction and the

 2 Blake’s father’s parental rights were also terminated in the 18 February 2020 order,

 but he did not appeal the trial court’s order and is therefore not a party to this appeal.
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

 amount of time she was incarcerated while this case progressed, the trial court failed

 to adequately credit the progress she made in remedying the problems which led to

 Blake’s removal and the neglect adjudication.

¶8 When considering a petition to terminate parental rights, the trial court first

 makes an adjudicatory determination based on the alleged grounds for termination.

 See N.C.G.S. § 7B-1109 (2019). “At the adjudicatory stage, the petitioner bears the

 burden of proving by ‘clear, cogent, and convincing evidence’ the existence of one or

 more grounds for termination under section 7B-1111(a) of the General Statutes.” In

 re A.U.D., 373 N.C. 3, 5–6 (2019) (quoting N.C.G.S. § 7B-1109(f) (2017)). “If a trial

 court finds one or more grounds to terminate parental rights under N.C.G.S. § 7B-

 1111(a), it then proceeds to the dispositional stage,” id. at 6, at which it “determine[s]

 whether terminating the parent’s rights is in the juvenile’s best interest.” N.C.G.S. §

 7B-1110(a) (2019).

¶9 We review a trial court’s adjudication of grounds to terminate parental rights

 “to determine whether the findings are supported by clear, cogent and convincing

 evidence and the findings support the conclusions of law.” In re E.H.P., 372 N.C. 388,

 392 (2019) (quoting In re Montgomery, 311 N.C. 101, 111 (1984)). “Findings of fact not

 challenged by respondent are deemed supported by competent evidence and are

 binding on appeal.” In re T.N.H., 372 N.C. 403, 407 (2019) (citing Koufman v.
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

 Koufman, 330 N.C. 93, 97 (1991)). “The trial court’s conclusions of law are reviewable

 de novo on appeal.” In re C.B.C., 373 N.C. 16, 19 (2019).

¶ 10 Subsection 7B-1111(a)(1) permits a trial court to terminate a parent’s rights if

 that parent is neglecting their child. A neglected juvenile is one “whose parent,

 guardian, custodian, or caretaker does not provide proper care, supervision, or

 discipline; or who has been abandoned; or who is not provided necessary medical care;

 or who is not provided necessary remedial care; or who lives in an environment

 injurious to the juvenile’s welfare.” N.C.G.S. § 7B-101(15) (2019).

¶ 11 In some circumstances, the trial court may terminate a parent’s rights based

 on neglect that is currently occurring at the time of the termination hearing. See, e.g.,

 In re K.C.T., 375 N.C. 592, 599–600 (2020) (“[T]his Court has recognized that the

 neglect ground can support termination . . . if a parent is presently neglecting their

 child by abandonment.”). However, in other instances, the fact that “a child has not

 been in the custody of the parent for a significant period of time prior to the

 termination hearing” would make “requiring the petitioner in such circumstances to

 show that the child is currently neglected by the parent . . . impossible.” In re N.D.A.,

 373 N.C. 71, 80 (2019) (cleaned up). In such situations, “evidence of neglect by a

 parent prior to losing custody of a child—including an adjudication of such neglect—

 is admissible in subsequent proceedings to terminate parental rights[,]” but “[t]he

 trial court must also consider any evidence of changed conditions in light of the
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

 evidence of prior neglect and the probability of a repetition of neglect.” In re Ballard,

 311 N.C. 708, 715 (1984). After weighing this evidence, the trial court may find that

 neglect exists as a ground for termination if it concludes the evidence demonstrates

 “a likelihood of future neglect by the parent.” In re R.L.D., 851 S.E.2d 17, 20 (N.C.

 2020) (citation omitted). Thus, even in the absence of current neglect, the trial court

 may adjudicate neglect as a ground for termination based upon its consideration of

 any evidence of past neglect and its determination that there is a likelihood of future

 neglect if the child is returned to the parent’s care. Id. at 20 n.3.

¶ 12 There were no allegations in this case that respondent-mother was currently

 neglecting Blake at the time of the termination hearing. However, it is undisputed

 that Blake was out of respondent-mother’s custody for an extended period of time and

 that he was previously adjudicated to be a neglected juvenile. Thus, our review

 focuses on whether the trial court correctly determined that there is a likelihood of

 future neglect if Blake is returned to respondent-mother’s care.

¶ 13 When assessing whether there is a likelihood of future neglect, “the district

 court must consider evidence of changed circumstances occurring between the period

 of past neglect and the time of the termination hearing.” In re Z.V.A., 373 N.C. 207,

 212 (2019) (citing In re Ballard, 311 N.C. at 715). “The determinative factors must be

 the best interests of the child and the fitness of the parent to care for the child at the
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

 time of the termination proceeding.” In re Z.V.A., 373 N.C. at 212 (quoting In re

 Ballard, 311 N.C. at 715).

¶ 14 Blake was previously adjudicated to be a neglected juvenile after he witnessed

 respondent-mother overdose on heroin in the hotel room where they were residing

 together, at which time he was in her care. In order to address the underlying causes

 of this adjudication, respondent-mother was ordered to complete a remediation plan

 which required her to participate in treatment for her drug addiction and stabilize

 her living situation. The termination order includes numerous unchallenged findings

 of fact clearly describing the limited progress respondent-mother made on this plan

 which are binding for purposes of appellate review. In re T.N.H., 372 N.C. at 407. As

 described below, these binding factual findings reflect that respondent-mother had

 not adequately addressed her issues and at the time of the termination hearing, the

 likelihood of future neglect was “very high,” as the trial court properly determined.

¶ 15 First, the unchallenged findings show that respondent-mother’s substance

 abuse issues continued after Blake entered DSS custody. She was inconsistent in

 engaging in treatment until she entered Black Mountain Substance Abuse Treatment

 Center for inpatient treatment from 24 October 2018 to 21 January 2019. However,

 two weeks after respondent-mother completed this inpatient treatment program, she

 once again tested positive for controlled substances—and continued to do so. She

 tested positive for cocaine and marijuana on 4 February 2019, for buprenorphine
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

 without a prescription on 18 February 2019, for marijuana on 7 and 28 June 2019,

 for marijuana and alcohol on 1 July 2019, and for alcohol on the first day of the

 termination hearing on 7 November 2019. Thus, while respondent-mother had no

 positive drug screens for approximately four months before the termination hearing

 was held, she had multiple positive screens in the weeks and months prior to that

 period, including soon after her discharge from inpatient drug treatment. Moreover,

 the four-month period of sobriety immediately prior to the termination hearing

 corresponded with respondent-mother’s regular attendance at Rowan Treatment

 Associates, where she was receiving methadone treatment.

¶ 16 The trial court’s unchallenged findings also reflect that respondent-mother’s

 housing situation remained unstable. The trial court found that respondent-mother

 “changed homes several times during the history of this case” and proceeded to list

 more than a half-dozen such changes. By the time of the termination hearing,

 respondent-mother had been living in a one-bedroom trailer with her new husband

 for about two months. This housing situation was unsuitable, however. Respondent-

 mother’s lease for that trailer only permitted three individuals to live there, and her

 stepdaughter was living with her and her husband every other weekend. During

 those times, Blake could not also reside in the trailer without violating the terms of

 the lease. Thus, as the trial court properly determined, respondent-mother’s housing

 at the time of the termination hearing was inadequate.
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

¶ 17 The trial court’s unchallenged findings also discuss other areas of concern.

 Respondent-mother was unable to maintain stable employment. She was fired from

 two separate jobs, with one of the firings resulting from her bringing her

 stepdaughter to work on a hot day without permission from her employer.

 Respondent-mother also withheld relevant information from DSS and her treatment

 provider. She did not inform DSS of her employment situation, her marriage, or her

 living situation, including that her stepdaughter stayed in her home on a regular

 basis. Respondent-mother did not sign a release of information for Rowan Treatment

 Associates, and she did not tell her treatment provider about her involvement with

 DSS or that a release was needed.

¶ 18 When the termination hearing occurred, Blake had been in foster care for more

 than twenty-six months. While respondent-mother can point to some signs of progress

 in the months immediately preceding the termination hearing, these were merely her

 first steps toward addressing her issues. Troublingly, respondent-mother had

 relapsed just two weeks after leaving inpatient drug treatment and repeatedly tested

 positive for a variety of controlled substances over a five-month period. At the time of

 the termination hearing, respondent-mother had only been consistent with a

 treatment regimen and gone without a positive drug screen for four months, and she

 had only been in her current housing for two months, which was inadequate. She had

 not established stable employment. The trial court properly determined that
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

 respondent-mother’s tenuous, limited progress on the issues that directly led to

 Blake’s prior adjudication was neither enough to rectify these issues nor enough to

 diminish the probability that Blake would likely be neglected again if he returned to

 her care. In In re O.W.D.A., 375 N.C. 645 (2020), we noted that “evidence of changed

 conditions must be considered in light of the history of neglect by the parents and the

 probability of a repetition of neglect,” 375 N.C. at 648 (quoting Smith v. Alleghany

 Cnty. Dep’t of Soc. Servs., 114 N.C. App. 727, 732 (1994)), and we held that although

 the respondent-father in that case may have made some recent, minimal progress on

 his case plan, “the trial court was within its authority to weigh the evidence and

 determine that these eleventh-hour efforts did not outweigh the evidence of his

 persistent failures to make improvements . . . and to conclude that there was a

 probability of repetition of neglect.” Id. at 654. The same reasoning applies here.

 Taken together, the trial court’s unchallenged findings support its conclusion that

 “[t]he probability of a repetition of neglect of the juvenile if returned to the home or

 care of [respondent-mother] . . . is very high.”

¶ 19 Therefore, we conclude the trial court properly determined that respondent-

 mother’s parental rights could be terminated based on neglect. Because we conclude

 this termination ground is supported, we need not address respondent-mother’s

 arguments as to N.C.G.S. § 7B-1111(a)(2), the remaining ground found by the trial

 court. See In re A.R.A., 373 N.C. 190, 194 (2019) (“[A] finding of only one ground is
 IN RE B.T.J.

 2021-NCSC-23

 Opinion of the Court

necessary to support a termination of parental rights . . . .”). We affirm the trial court’s

order terminating respondent-mother’s parental rights.

 AFFIRMED.